UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X

UNITED STATES OF AMERICA,

v.

RICARDO MARIAN FANCHINI,

Defendant.

-----------------------------X

CR-07-736 (CPS)

March 20, 2008

Brooklyn, New York

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE CHARLES P. SIFTON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government: BENTON J. CAMPBELL, ESQ.
UNITED STATES ATTORNEY
BY: CAROLYN POKORNEY, ESQ.
ASSISTANT U.S. ATTORNEY
225 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant: HENRY MAJUREK, ESQ.
GERALD SHARGEL, ESQ.

Audio Operator: MELANIE SANDERS

Court Transcriber: ARIA TRANSCRIPTIONS
c/o Elizabeth Barron
31 Terrace Drive, 1st Floor
Nyack, New York 10960
(215) 767-7700

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: Criminal cause for status conference, United States versus Ricardo Fanchini.

THE COURT: Okay. Do we have the defendant here?

Who is here for the prosecution?

MS. POKORNEY: Good afternoon, your Honor. Carolyn Pokorney for the government.

THE COURT: And for the defendant?

MR. SHARGEL: Gerald Shargel and Henry Mazurek. Good afternoon, your Honor.

THE COURT: Good afternoon. I put this matter on the calendar because of a letter on behalf of the defendant.

Have you been able to straighten out this situation with respect to visitation or not?

MS. POKORNEY: Your Honor, we have spoken to legal counsel and they said that the problem can be remedied --

THE COURT: Legal counsel at the BOP?

MS. POKORNEY: That's correct. The problem can be remedied by the Court taking judicial notice that the visitors in question are the relatives of the defendant. This can be accomplished in two ways. Either defense counsel can submit a proposed order, which we don't object to, or we can take care of it today on the record, and I can provide the transcript to counsel at the MDC.

MR. SHARGEL: Your Honor, may I say something about this?

THE COURT: That's assuming -- so what you're proposing be done is simply that I direct the Bureau of Prisons to list certain individuals on a visitors list?

MS. POKORNEY: It can be even simpler than that, if the Court takes judicial notice that certain individuals are the relatives of the defendant. And I'll accept the representations of --

THE COURT: The form in which I take judicial notice of anything has to obviously be in writing for the Bureau of Prisons.

Alright, what thought did you have?

MR. SHARGEL: What I want to say, your Honor, is that -- my point is that this issue is not limited to visitation. I appreciate the government looking into this but it's more than that. The fact is that my client's legal name now is Richard Rotmann. It does make a difference.

Before I note the difference, I'd like to put this in the following context: The government has never said, in its answering letter or even today, that they are in any way prejudiced by the change. I'm not asking that the Fanchini name simply disappear. I'm just asking for an inversion, that Richard Rotmann first appear.

Let me give you another example.

THE COURT: You'd like an amendment of the indictment?

MR. SHARGEL: Yes, I'd like an amendment of the indictment, and I've cited authority for the proposition that you have the power to do that, and all I'm asking for is the reverse; that it's Richard Rotmann.

THE COURT: Right.

MR. SHARGEL: If they want to put in an a/k/a of Ricardo Fanchini, that's one thing.

THE COURT: Right.

MR. SHARGEL: But let me alert you to a problem that I think is somewhat acute. Mr. Fanchini at the moment but it's Mr. Rotmann, has visited doctors in the United Kingdom. You know he was extradited from London. He has medical records in London with physicians, and I could just imagine -- and it might be the MDC. He might be transferred to another place, where medical records, in the event of a health problem, medical records are sent from England under the name Richard Rotmann. I expect all sorts of problems.

THE COURT: Right.

MR. SHARGEL: In addition to that --

THE COURT: But why aren't these problems of your client's own making?

MR. SHARGEL: Changing his name?

THE COURT: If I could cure the problem with a stroke of the pen, that might be one thing. But it seems to me we've got a situation in which, at least according to the

grand jury, your client has all sorts of names. That's not to criticize him but if that's what the grand jury believes is the way he lived, it's going to be pretty difficult for me or him to cure the problem.

MR. SHARGEL: Judge, may I say this? When Mr. Rotmann was married, before the indictment, he decided to legally change his name and change his passport. I wonder, if the situation were reversed or we're talking about a woman who put her husband's name, wouldn't everyone expect that that is her legal name at the time? All I'm asking is that he be given the respect and dignity of having the indictment under his own name.

Once again, I don't see how the government is prejudiced in any way. The jury certainly will hear the Fanchini name. There will be no confusion of identity when witnesses testify. There's not going to be any tactical advantage gained by the defense because of the inversion of the names. I think that it would just be easier going forward, rather than burdening the Court with applications to meet or respond to particular needs, to simply invert it.

THE COURT: Okay. Let me ask you another question. What are the names that we're immediately concerned about because, as the government attorney is saying, something could be done today which would, for one thing, remedy the situation for the weekend and beyond.

So if you've got some names of potential visitors that you'd like to have come into the prison to visit your client, why don't you give me the names now and let me, as your adversary suggests, take judicial notice, if you don't object to it, of those names. She can take the transcript over or you can take the transcript over and give it to the Bureau of Prisons, and we'll solve some part of this problem.

MR. SHARGEL: Well, to solve part of the problem, the defendant's wife is Katherine Rotmann.

THE COURT: Okay. Katherine with a "K" or with a "C"?

MR. SHARGEL: Yes, with a "K".

THE COURT: "K", yeah.

MR. SHARGEL: And his son, who is eighteen or nineteen months old, is Richard Rotmann, Junior.

THE COURT: Okay. Alright, I'll take judicial notice of the identity of those individuals and direct that the Bureau of Prisons add them to the defendant's visiting list. I'll reserve decision on the larger application for amendment of the indictment. Okay, thanks.

MS. POKORNEY: Thank you, your Honor.

MR. SHARGEL: Just one or two -- I think, in fairness, I should alert you to one other point.

THE COURT: Yeah.

MR. SHARGEL: Because I'm not trying to -- I want to make this clear to the Court.

THE COURT: Sure.

MR. SHARGEL: At the time that the pretrial motions are filed, in accordance with our schedule, I will move to amend the caption. That will be one of the substantive motions, because I think it's prejudicial. May I say, I think it's prejudicial --

THE COURT: You're saying you'd make the motion on another ground, if I deny it on this ground.

MR. SHARGEL: Exactly.

THE COURT: Okay, we're forewarned.

MS. POKORNEY: Thank you, Judge.

MR. SHARGEL: Thank you, Judge.

* * * * * * * * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON May 15, 2008